194 So.2d 436 (1966)
Mary Estus WEBB, Adm.
v.
ZURICH INSURANCE CO. et al.
No. 6797.
Court of Appeal of Louisiana, First Circuit.
November 21, 1966.
Rehearing Denied December 28, 1966.
Writ Granted February 23, 1967.
*437 H. Alva Brumfield, Sylvia Roberts, and Emile M. Weber, Baton Rouge, for plaintiff-appellee-appellant.
Normann & Normann, by Frank S. Normann, and Margot Mazeau, New Orleans, for defendant-appellant, Zurich Ins. Co.
Durrett, Hardin, Hunter, Dameron & Fritchie, by Wallace A. Hunter, Baton Rouge, for defendants-appellees, Cessna Aircraft Co. and Insurance Co. of North America.
Robert L. Kleinpeter, Baton Rouge, for defendant-appellee, Sheriff Bryan Clemmons.
Before LANDRY, ELLIS and BAILES, JJ.
ELLIS, Judge.
This case, which was consolidated with the cases of Owen v. Cessna Aircraft Co. et al., 194 So.2d 441, and Owen v. Zurich Insurance Company et al., 194 So.2d 442, for the purposes of trial, arises out of an airplane crash which took place near Lansing, Michigan on April 28, 1956. In the accident, the three occupants of the aircraft, a Cessna 182, lost their lives. The pilot of the plane, which was the property of the Sheriff's Department of East Baton Rouge Parish, was Paul O. Pittman, a special deputy sheriff in East Baton Rouge Parish. The two passengers were Jesse L. Webb, Jr., Mayor of Baton Rouge, and James Kimbrough Owen, a professor of government at Louisiana State University.
This case was brought by Mrs. Mary Estus Webb, widow of Jesse L. Webb, Jr., as administratrix of his succession, against Sheriff Bryan Clemmons of East Baton Rouge Parish, Zurich Insurance Company, which insured the plane, Cessna Aircraft Company, which manufactured the plane, Insurance Company of North America, its insurer, Hair Flying Service, a partnership composed of J. D. Hair, Sr., and J. D. Hair, Jr., and against the Messrs. Hair individually.
Case No. 6798 was brought by Mrs. Frances Tucker Owen, widow of James Kimbrough Owen, as administratrix of his succession, against Cessna, its insurer, Hair Flying Service and the Messrs. Hair.
Case No. 6799 was brought by Mrs. Owen against Sheriff Clemmons and Zurich Insurance Company.
It appears from the record that Sheriff Clemmons, acting in his official capacity, purchased a Cessna 182 single engine airplane through Hair Flying Service, Cessna's agent in Baton Rouge, Louisiana. Delivery of the aircraft was accepted on or about April 11, 1956, or about two weeks before the accident. Insurance providing for property damage and bodily injury liability was taken out with Zurich Insurance Company, and was in effect at the time of the accident. In the policy, Paul O. Pittman was the named pilot of the aircraft.
Sheriff Clemmons testified that Mayor Webb asked if the plane could be used to transport himself and Professor Owen to a conference being held in Lansing, Michigan, and that permission was granted provided *438 that the expenses would be taken care of by Mayor Webb, either personally or through the city. He further testified that Mr. Pittman was to fly the plane on the trip, but that Mayor Webb made the arrangement with him. Paul O. Pittman was bonded a special deputy sheriff, and commanding officer of the Sheriffs Air Squadron, but at no time was he ever on the payroll of the Sheriffs Department. He was a licensed private pilot, with a single engine license. He was not licensed to fly by instruments, as a result of which his flying activities could be restricted by inclement weather conditions.
The aircraft, piloted by Pittman with Webb and Owen as passengers, departed Baton Rouge early on the morning of April 28, 1956, and arrived at Fort Wayne, Indiana, at 1:09 P.M. Eastern Standard Time the same day. It remained at Fort Wayne, Indiana, until 5:10 P.M., E.S.T., and then departed for Lansing, Michigan, without a flight plan being filed. The record leaves no doubt that instrument weather would necessarily be encountered en route to and over Lansing, Michigan.
The plane was in intermittent contact with Lansing Radio and Lansing Approach Control from 5:35 P.M. when it reported to Lansing Radio, until 6:02 P.M. when it acknowledged instructions from Lansing Approach Control. The plane was not heard from again, but at 6.08 or 6:10 P.M., it crashed, killing all occupants.
The suits which were filed, as above set forth, alleged negligence on the part of Pittman, pleading the doctrine of res ipsa loquitur; and, alternatively, in a number of specific respects relating to his flying in instrument weather when not licensed to do so, failing to familiarize himself with weather conditions, and failure to control the airplane properly. It is further alleged that Pittman was acting as agent for the Sheriff at the time of the accident, rendering the Sheriff liable for his negligent acts.
The suits as to Cessna and its insurer are based in warranty, alleging the applicability of res ipsa loquitur, and alternatively, the negligent design and manufacture of the aircraft.
Hair Flying Service, J. D. Hair, Sr., and J. D. Hair, Jr., were released from the case by virtue of a consent judgment, maintaining their exceptions of no cause or right of action.
Zurich filed an exception of no cause or right of action, alleging the inapplicability of the direct action statute in a case where the accident occurs outside of Louisiana. Exceptions were also filed on behalf of Sheriff Clemmons, alleging his governmental immunity from a suit, and other matters relating to the merit of the case.
By Act 20 of 1959, Mrs. Owen was authorized to sue Bryan Clemmons in his capacity as Sheriff of East Baton Rouge Parish and a supplemental petition alleging same was filed. Exceptions to this latter petition were filed by Zurich and Clemmons.
By Acts 34 and 89 of 1959, Mrs. Webb was authorized to sue Clemmons. Exceptions were filed to their supplemental petition filing them.
All exceptions except that of Zurich relating to the direct action against it were overruled by the trial Court, and the latter exception was referred to the merits.
Following a lengthy trial, judgment was rendered in Case No. 6797 in favor of plaintiff and against Bryan Clemmons for $234,412.11. In Case No. 6799, judgment was rendered for plaintiff and against defendant for $208,698.00. Both of these judgments were made subject to the limit of liability of the Zurich policy, but the Court maintained Zurich's exception which had been referred to the merits, and dismissed both suits as to it. Both suits involving Cessna and its insurer were dismissed as to them.
*439 Zurich took a suspensive appeal from both judgments, alleging that it was an aggrieved party because of certain rulings of the court relative to its policy defenses, and because of the fear (later justified) that Sheriff Clemmons would not appeal the judgment against him. Both Mrs. Webb and Mrs. Owen answered the appeal asking for an increase in the award made to them and for reversal of the judgment maintaining the exception filed by Zurich. In addition, they took a devolutive appeal, asking for reversal of the judgment dismissing the suit as to Cessna and its insurer.
Motions to dismiss the appeals by Zurich were filed in this Court, and were denied. Owen v. Zurich Insurance Company, 185 So.2d 230 (La.App.1966); Webb v. Zurich Insurance Company, 185 So.2d 232 (La.App. 1966).
Careful reading of the record in this case does not reveal any basis for liability on the part of Cessna. On the contrary, it is clear that the aircraft when delivered was completely airworthy. The only fault testified to was some damage to the finish of the aircraft caused by a hailstorm which occurred after its manufacture, but before its sale. A reduction in the sales price was given as a result thereof. Needless to say, once the aircraft was delivered to the Sheriff, there was no further control of it by Cessna, and the rule of res ipsa loquitur could not be involved.
Without exception, all of the expert witnesses who testified in the case were of the opinion that the accident was a result of a pilot untrained and inexperienced in instrument flying attempting to operate his aircraft under instrument conditions. Mr. Pittman did not have an instrument license as a pilot. The weather in the Lansing area was instrument weather. When he last reported he was 1000 feet above the overcast, and when next seen, immediately before the crash, the plane had just come out beneath the overcast. The experts were unanimous in their conclusion that the wreckage distribution and the entire pattern of the accident make up a classic case of a "weather accident". In such an accident, a pilot who is trained to fly only under conditions where he can see the horizon is deprived of this reference by fog or by clouds, and is consequently unable to orient the plane properly. He is unable to sense the attitude of the plane, and makes mistakes in attempting to compensate for what he imagines are deviations from his intended flight path. The stresses and strains which are created by such mistakes exceed the structural limits of the aircraft, causing it to disintegrate in the air, and the crash immediately follows.
The record of this case contains testimony and depositions from persons who saw the crash; from the tower personnel at Fort Wayne, Indiana, and Lansing, Michigan; from the man who conducted the official investigation of the crash; from expert meterologists; and from experts in the field of aircraft accidents. In all this voluminous record there is hardly a word of testimony that does not point to the conclusion that was reached by the trial Court: that the accident was caused by the negligence of Paul O. Pittman, the pilot of the plane, in flying the plane under conditions which were beyond his capabilities and experience as a pilot.
We now turn to the liability of Sheriff Clemmons. In assessing his liability, the following principles of law are applicable. In Gray v. DeBretton, 192 La. 628, 188 So. 722 (1939), it is stated:
"In discussing this point it must be borne in mind that no liability attaches to the defendant sheriff under the doctrine of respondeat superior, or under the doctrines of master and servant and principal and agent. The relation between a sheriff and his deputy is an official and not a private relation. The deputy is not a representative of the sheriff in his individual capacity, but he is a public officer whose authority and duty are regulated by law.

*440 As to the public, whose servants these officers are, the acts and omissions of a deputy sheriff are the acts and omissions of the sheriff himself. So far as the responsibilities of office are concerned, the sheriff is liable for the acts and omissions both of himself and his deputy. Rich v. Graybar Electric Co., 125 Tex. 470, 84 S.W.2d 708, 102 A.L.R. 171, and annotations 102 A.L.R. 182, ix."
See also, Robertson v. Palmer, 55 So.2d 68 (La.App.1952). However, it is made clear in Gray v. DeBretton, supra, that the Sheriff is not liable for an act done by his deputy, while on duty or in the process of carrying out his duty, which is not related thereto.
In order for a Sheriff to be liable for the negligent acts of his deputy, the following conditions must be present:
1st. The deputy must be on duty
2nd. He must commit a wrongful act
3rd. The wrongful act must result from the wrongful manner in which his duty is carried out
Appellant Zurich contends that the liability of the Sheriff is further limited by the following language in R.S. 33:1433(A):
"That no sheriff of any parish of this state, nor his sureties, shall be liable for any act or tort committed by one of his deputies, or by any person commissioned as deputy sheriff by him, beyond the amount of the bond furnished by said deputy sheriff, unless said deputy sheriff, in the commission of the said act or tort, acts in compliance with a direct order of, and in the personal presence of, the said sheriff, at the time the act or tort is committed."
However, it is clear that where the sheriff has a policy of public liability insurance, and no attempt is made to bring in the surety on his bond, that, if the sheriff is found liable for the negligent acts of his deputy, the limit of liability of the policy would not be affected by the above quoted provision. Rhodes v. Jordan, 157 So. 811 (La.App. 1934). On the other hand, the basic liability of the sheriff cannot be affected by the fact of the existence of a policy of liability insurance.
It is therefore necessary to examine the relationship between Sheriff Clemmons and Mr. Pittman, and the circumstances surrounding the fatal flight. As pointed out earlier in this opinion, the following facts seem to be established by a preponderance of the evidence: Mr. Pittman held a commission as a special deputy sheriff, and was bonded as provided by R.S. 33:1433(A). He held the rank of Major and was commanding officer of the Sheriff's Air Squadron, which is an organization of unpaid, private pilots who, from time to time, voluntarily assist the sheriff in his duties. He was not at the time of the accident, and apparently never had been, a salaried deputy sheriff. He was designated in the Zurich policy as the pilot of the Sheriff's plane. He held a private pilot's license which permitted him to fly single engine land planes under visual flight conditions only. He had no official instrument flight training or experience. He was not ordered by the Sheriff to make the trip, but it appears from the testimony of the Sheriff that he would not have allowed Mayor Webb the use of the plane if it had not been flown by Pittman.
It further appears clear that the use of the plane was given to the Mayor provided that all expenses of the trip would be borne by him or his office. We are further satisfied that Pittman was persuaded to go on the trip by the Mayor, and that Pittman made the flight as a favor to him.
The District Judge found the following:
"The Court must also hold that his negligence is imputed to the Sheriff of East Baton Rouge Parish. Paul Pittman was a commissioned and bonded deputy sheriff of East Baton Rouge Parish; he was commander of the Sheriff's Air Squadron; he was the only pilot designated for *441 this particular airplane; he was engaged at the time of the accident in transporting the Mayor-President of the City of Baton Rouge and Parish of East Baton Rouge to a conference of municipal officials; he was engaged at the time of the accident in carrying out the Sheriff's avowed policy of cooperating with other governmental officials for the Sheriff's benefit; he was obliged to and charged with the responsibility of operating and protecting this valuable property belonging to the Sheriff's office. Considering all of these factors, Deputy Pittman was unquestionably performing an act under color and by virtue of his office as a deputy sheriff of East Baton Rouge Parish Sheriff's Office when this tragic accident occurred. Moreover, it is equally apparent that he was operating the plane at all times as agent of the Sheriff's Office and under the control of the Sheriff's Office. As a matter of fact, the evidence shows that the Sheriff himself would have been along on the trip but for the last-minute illness."
We cannot agree with this finding. Pittman made the flight, not because he was a deputy sheriff, under the orders of the Sheriff, but because the Mayor asked him to do so. He was designated as pilot by the Sheriff because he was named in the policy as such. An "avowed policy of cooperation" cannot be construed as official business within the meaning of the law. That the Sheriff may or may not have intended to go on the trip is not material, since the fact is that he did not go.
We find that Mr. Pittman was not engaged in carrying out an official act or duty at the time of the accident, and that consequently, Bryan Clemmons cannot be said to be liable for his negligence.
The only other question to be disposed of is that of the direct action against Zurich Insurance Company. It is unquestioned that the accident took place in Michigan, outside of the territorial limits of the State of Louisiana. The pertinent provisions of R.S. 22:655 are as follows:
"This right of direct action shall exist * * * provided the accident or injury occurred within the State of Louisiana."
The jurisprudence makes it clear that in a case such as this one, no direct action will lie. Honeycutt v. Indiana Lumbermens Mutual Insurance Co., 130 So.2d 770 (La. App.1961).
Accordingly, the judgment of the Court below is reversed and plaintiff's suit is dismissed at her cost.
Reversed and rendered.