SARTAIN, Judge.
Plaintiffs, the mother and father of Kenneth Rhodus, appeal from a judgment of the district court which denied their claims for the alleged wrongful death of their son. Kenneth Rhodus died on April 24, 1967, as a result of extreme diabetic acidosis while he was in the custody of the Sheriff and incarcerated in the East Baton Rouge Parish Jail. We affirm.
Plaintiffs alleged that Sheriff Bryan Clemmons and/or his deputies knew or had reason to know that the decedent was a diabetic, but despite this knowledge failed and refused to furnish him with insulin or other proper medical treatment to alleviate his condition and that their failure to do so amounted to negligence for which the Sheriff is individually and in his official capacity answerable to them in damages. The City-Parish was dismissed as a party defendant by way of a judgment *538 sustaining an exception of no cause of action. There was no appeal from this decision so the Sheriff stands alone as the defendant herein.
The facts which are important to an adjudication of the issues posed here are essentially undisputed and we quote with approval from those findings of fact and conclusions of law as expressed by the trial judge in his written reasons for judgment, to-wit:
“The testimony of the sheriffs deputies reveals that Rhodus was confined to the Parish jail on several warrants dealing with felony thefts and a misdemeanor on April 21, 1967. Subsequently, on April 24th, about noon, the shift sergeant at the jail, Sergeant M. E. Heard, said that he observed Rhodus to be shaking and obviously ill. Because of his concern for the prisoner’s condition he called the Coroner, Dr. Chester Williams, and informed him of Rhodus’ illness. Dr. Williams told Heard to release the prisoner; however, Heard, being aware that only the committing Judge could perform this function, brought the prisoner down to see Judge Fred Blanche who had issued the warrants. Judge Blanche, while not releasing the prisoner, did instruct Heard to request Dr. Williams furnish the necessary medical treatment. Thereupon, Sergeant Heard again called Dr. Williams who gave him the same advice as previously noted. Later in the afternoon of the same day it appears another call was placed by Sergeant Heard to Dr. Williams requesting some assistance and he was told to call the prisoner’s personal physician. Upon information from Rhodus, a Dr. Selser was called, but he also declined to see the prisoner. Sergeant Heard said that he again called Dr. Williams, to no avail. Apparently Sergeant Heard, the Assistant Warden, Lieutenant A. B. Cutrer, and the Chief Criminal Deputy, George LeBlanc, became seriously concerned about the prisoner’s condition because they then brought the matter directly to the Sheriff’s attention. After being informed of Dr. Williams’ position, the Sheriff contacted his own personal physician and was told to secure a urine specimen, which was done and transmitted to the doctor’s office. The Sheriff recalled that at about 6:00 P.M. that evening he received the report from the doctor, confirming that Rhodus was suffering from a diabetic condition but was not in immediate danger. At 8:30 that night Rhodus was found unconscious in the jail by the night sergeant, who sent him to the hospital in an ambulance where he was pronounced dead on arrival by Dr. Williams. The cause of death was described by Dr. Williams as being diabetic acidosis.
“Not only the Sheriff’s deputies who testified, but Dr. Williams acknowledged that the Coroner is in sole charge of the medical treatment of prisoners in the jail and that in the realm of medical matters concerning inmates the sheriff’s deputies are to take their instructions from Dr. Williams or his deputy coroners. The Court is satisfied that both the Sheriff and the deputies in charge of the custody of the prisoner exercised every effort to secure medical assistance in his behalf. The Court is further satisfied that neither the deputies nor the Sheriff himself were aware that Rhodus was a diabetic until shortly before his death and even then had no reason to believe that an emergency existed. The Court believes that it is obvious that there is no evidence showing any fault or negligence on the part of the Sheriff of the Parish of East Baton Rouge, or of his employees in this matter. It is equally manifest to the Court that a person, despite his status as a prisoner, is entitled to timely and adequate medical treatment by those in responsibility. Unfortunately, the facts herein do not justify such a conclusion.”
Plaintiffs argue here on appeal that the decedent should not be the victim of a “petty squabble” between the Sheriff and *539 the Coroner and that upon the latter’s refusal to attend to the medical needs of decedent, it was the duty of the Sheriff to obtain the needed medical assistance.
The record does not disclose nor was the Coroner asked why he declined to attend to the decedent notwithstanding four to six requests from the members of the Sheriff’s staff to do so. While it is not disputed that the prisoner was an ill man on April 24, 1967, the date of his death, the last medical advice obtained independently by the Sheriff from his own personal physician was to the effect that decedent was “in no immediate danger”. It was for this reason that the Sheriff decided to return the prisoner to the cellblock and attempt to prevail upon the Coroner to treat him the following morning.
Plaintiffs argue that the deputies knew or should have known that Rhodus was a diabetic and could have furnished him with the proper medication (insulin) which was available at the jail. The record before us contains not one scintilla of evidence to support any conclusion that the deputies knew that decedent was a diabetic until 6:00 P.M. when the result of a urine analysis was made known to them by the Sheriff’s personal physician. It was at that moment that the Sheriff was also advised that the prisoner was in no immediate danger.
The testimony of plaintiffs and an acquaintance of decedent established that decedent had suffered from a diabetic condition for many years and was fully aware of his medical requirements and daily administered insulin shots to himself. We cannot find contrary to the unanimous testimony of all of the deputies involved in this matter that at no time during decedent’s four day period of incarceration did he ever advise them that he was a diabetic. The procedure followed in cases where a prisoner is a diabetic was carefully outlined by the deputies. Either the prisoner notified the jailer or he carried some means of identifying his condition such as a card or tag. The Coroner would be contacted and if the prisoner was familiar with his particular type of medication the Coroner would give permission to the jailer to make the medicine available from the supply on hand. It is inconsistent to us to consider that the deputies would have gone to the extent that they did on the day of decedent’s death to obtain medical treatment for him, first from the Coroner, then his purported personal physician, and lastly the Sheriff’s own personal physician, had they been told by the decedent that he was in fact a diabetic. It would have been a relatively simple matter to follow the usual procedure and make the needed medicine available to him.
It is undisputed that in the East Baton Rouge Parish Jail the Coroner is the chief medical officer and is assisted by a staff of other physicians. The Sheriff cannot be oblivious to the medical needs of a prisoner and must exercise a high degree of care when he is charged with the keeping of a person who is under a disability or so incapacitated as to protect himself. Shuff v. Zurich-American Insurance Co., La.App., 173 So.2d 392. However, the factual allegations in Shuff[1] and the authorities therein cited in support of its remand are not apposite to the facts in the instant case. Here the prisoner was sick but from 11:00 A.M. to 6:00 P.M. on the day of his death, the Sheriff and his deputies endeavored to obtain medical attention for him. The last uncontradicted medical information that they obtained was to the effect that the prisoner was in no immediate danger. Under these circumstances the death of Kenneth Rhodus is not the result of any inactivity or lack of effort or breach of duty on the part of the Sheriff or his deputies.
The trial judge correctly resolved the issues and his decision is affirmed. The cost of this appeal is to be borne by appellants.
Affirmed.

. Plaintiff’s suit was dismissed in trial court on exception of no cause of action.