Edwina Arnold **WILLIAMS**, Individually as Administrator of the Estates of Her Minor Children, et al.

v.

**UNITED STATES of America.**
Civ. A. No. 70–2496.

United States District Court,
E. D. Louisiana.
Feb. 7, 1973.

Stephen B. Murray, Murray & Alford, New Orleans, La., for plaintiff.

Gerald J. Gallinghouse, U. S. Atty., John R. Schupp, Asst. U. S. Atty., New Orleans, La., for defendant and third-party plaintiff, the United States.

Emile C. Rolfs, III, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for defendants and third-party defendants, Louis A. Heyd, Jr., and Interstate Fire and Casualty Co.

HEEBE, Chief Judge:

Plaintiff originally filed this action on September 3, 1970, as a suit against the United States under the Tort Claims Act. On April 18, 1972, the United States joined Sheriff Louis A. Heyd, Jr., several of his deputies, his insuror, Interstate Fire and Casualty Company, and Sheriff Buster Kern of Harris County, Texas, as third-party defendants. On August 31, 1972, plaintiff filed a supplemental and amended petition making Sheriff Heyd, Interstate Fire and Casualty and Sheriff Kern defendants in the original cause. It is now agreed that the actions against Sheriff Kern should be dismissed, since he is not subject to the personal jurisdiction of this Court. Jurisdiction against Sheriff Heyd and his insuror is asserted under the Civil Rights Act, 42 U.S.C. § 1983. This cause is now before the Court on motions of defendants Heyd and Interstate Fire and Casualty to dismiss the third-party complaint and the amended complaint.

## FACTS

Plaintiff's decedent, Calvin Williams, was arrested on January 16, 1970, and incarcerated in the Harris County Rehabilitation Center, a Texas institution which houses federal prisoners pursuant to contract. At that time, according to

the deposition of George C. Ransom, then Assistant Director of the Rehabilitation Center, Williams was acting in an unusual manner. When his picture was to be taken, he attempted to run from the camera. He refused to provide basic information, such as his address, to his jailors, and once "jumped down on his hands and started doing pushups on his hand." Relying on his impressions of these actions, coupled with the recommendation of the arresting FBI agents that the prisoner was dangerous, Assistant Director Ransom decided to place Williams in solitary confinement.

Ransom states that Williams was removed from his padded "isolation" cell only for the purpose of allowing the cell to be cleaned. This was necessary because Williams would repeatedly remove his clothes, urinate and defecate in the cell, and then spread his waste on the floor and walls.

On Monday, January 19, Deputy U.S. Marshal John Laetsch, who had been informed that he would transport Williams to New Orleans, visited the Rehabilitation Center on other business. He looked into Williams' cell. The prisoner was covered with human waste, was uncommunicative, and because he went limp, had to be carried to the shower. Once in the shower, he stood up and bathed himself.

Later that same day, a hearing was held in front of the prisoner's cell, with the cell door open. Present were Williams, Laetsch, Ransom, United States Commissioner Ralph Fowler, and according to Laetsch, an assistant United States attorney, a special agent of the FBI and a sergeant of the Harris County Sheriff's Department. Williams was completely naked in his cell. At the hearing, Williams was advised of his rights and, Laetsch believes, bond was set. The only communication by the prisoner was to acknowledge that he was Calvin Williams.

During the next few days, the prisoner conducted at least a partial hunger strike and was, it appears, checked in his cell once or twice daily by a doctor or male nurse.

On January 22, another hearing was held in the Rehabilitation Center for the purpose of identifying the prisoner. Williams' mother, father and sister identified him in the presence of the United States Commissioner. At that time Williams was rational, visited with his family, and took some soup.

On January 24, Deputy Marshals Laetsch and J. W. Walker picked the prisoner up at the Rehabilitation Center in order to transport him to New Orleans. Both Deputy Marshals agree that Williams seemed extremely weak, both at this time and during the automobile trip to New Orleans. En route, in fact, Laetsch says that he contacted Deputy Marshal Sedgebeer of New Orleans by telephone and informed him that a doctor should be provided for Williams upon his arrival.

On arrival at the Orleans Parish Prison Annex at approximately 2:30 p. m. of the 24th, a sergeant and a deputy sheriff helped carry Williams into the Annex. At this time, Deputy Marshal Laetsch, according to his deposition, told the sergeant that the prisoner was in a weakened condition, that a doctor had been examining him at the Harris County jail, and that, in Laetsch's opinion, the Parish Prison authorities should have a doctor examine Williams. The sergeant allegedly agreed to provide a doctor for this purpose.

Approximately one and one half hours later, at about 4:00 p. m. of the 24th, Calvin Williams died in his cell. At that time he had a wound on his forehead which both deputy marshals agree did not exist when he was put into the cell. It is alleged that Williams' death was caused by subdural hematoma and/or emaciation. According to plaintiff, the deputy United States marshals and the officials of the Parish Prison Annex were negligent in failing to provide obviously indicated medical treatment.

### MOTION TO DISMISS THE THIRD-PARTY COMPLAINT

The United States third-partied Sheriff Heyd, his deputies and his insuror on the grounds that the sheriff contracted with the United States to confine and care for federal prisoners in the Orleans Parish Prison. On the other hand, third-party defendants contend that Sheriff Heyd signed the contract only on behalf of Orleans Parish, not in his personal capacity. Therefore, they reason, neither the sheriff, his deputies nor his insuror are parties to the contract, and so have no obligation under it.

■ The Court does not find it necessary to decide this contract question. It should be noted, however, that the Fifth Circuit has held that the United States cannot be held liable under the Tort Claims Act for the negligent acts or omissions of employees of non-federal prisons which contract to care for federal prisoners. Logue v. United States, 459 F.2d 408, 411 (5th Cir. 1972), cert. granted —— U.S. ——, 93 S.Ct. 908, 34 L.Ed.2d 685 (1973). Thus, the contract alone does not create a third-party right against the sheriff and his deputies since they could not be secondarily liable to the United States.

■ Nevertheless, in this case there is ample reason to allow the third-party complaint to stand. Whenever the governing substantive law recognizes a right of contribution, Rule 14 of the Federal Rules of Civil Procedure permits the use of impleader to seek relief from joint tortfeasors. 6 Wright & Miller, Federal Practice and Procedure § 1448 (1971). In Louisiana joint tortfeasors have a right to contribution. LSA–C.C. art. 2103; Rouley v. State Farm Mutual Automobile Ins. Co., 235 F.Supp. 786 (W.D.La.1964). The complaint in this case alleges that the negligence of both the federal deputies and the prison personnel contributed to Williams' death. That is sufficient to make the prison officials possible joint tortfeasors, and hence contributors under Louisiana law. LSA–C.C. art. 2324;

see, Russo v. Aucoin, 7 So.2d 744 (La. App.1942). The sheriff also contends that since no negligent act is alleged against him personally, but only against his deputies, he has no liability in this case and therefore cannot be a possible contributor. The Court disagrees with this point for the reasons discussed at length below.

### MOTION TO DISMISS THE AMENDED COMPLAINT

a) Prescription

■ The amended complaint making Sheriff Heyd and his insuror principal defendants was filed more than one year after Calvin Williams' death. It is undisputed that the Louisiana one-year prescriptive period for tort actions is applicable to this § 1983 action. Knowles v. Carson, 419 F.2d 369 (5th Cir. 1969). Plaintiff urges, however, that the Louisiana tolling rule, as well as the barebones prescriptive time period, should apply.

■ In Louisiana, a suit against one person tolls prescription against all persons solidarily obligated with him, even if they are not named in the original complaint. LSA–C.C. art. 2097. Obligors are liable *in solido* "when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor." LSA–C.C. art. 2091. Joint tortfeasors, as well as their liability insurors, are considered solidary obligors since each is liable to the plaintiff for damages. LSA–C.C. art. 2324; Shaw v. New York Fire & Marine Underwriters, Inc., 252 La. 653, 212 So.2d 416 (1968); Saxon v. Fireman's Ins. Co. of Newark, N. J., 224 So.2d 560 (La. App.1969). It does not matter that the liabilities of the respective obligors arise by different reasons of law. LSA–C.C. arts. 2091, 2093; Saxon v. Fireman's Ins. Co., *supra*. A sheriff's liability is limited by Louisiana statute to the amount of his deputy's bond. LSA–R.S. § 33:1433 as amended by Act 722 of

1972. Since this limitation does not affect the sheriff's status as a solidary obligor however, it does not vary our determination of the present motions. Melancon v. Traveler's Ins. Co., 209 F. Supp. 68 (W.D.La.1962); George Moroy Cigar & Tobacco Co., Inc. v. Henriques, et al., 184 So. 403 (La.App.1938).[1] As noted above, the sheriff, his deputies and his insurors are all prospective contributors in this case. Thus, if the Louisiana tolling provision applies, the original suit against the United States has interrupted prescription against the defendants named in the amended complaint.

▬ When the federal courts borrow a state statute of limitations to decide a federal cause, the entire state limitations law, including its tolling provisions, is generally applied. Developments in the Law: Statutes of limitations, 63 Harv.L.Rev. 1177, 1267–68 (1950); United States ex rel. Sabella v. Newsday, 315 F.Supp. 333, 335–336 (E. D.N.Y.1970) and cases cited therein. This is so because "a severe, short state statute may be considerably ameliorated by other state provisions; ignoring the softening criteria may lead to unintended and harsh cutting off of meritorious claims." United States ex rel. Sabella v. Newsday, *supra*, at 335. The Louisiana prescriptive period applicable to this case is quite short. Surely the adoption of the entire state provision, rather than the one year time period without its accompanying tolling provisions, more nearly accomplishes our mandate to look to state law with a view toward fulfilling the purposes of the Civil Rights Act. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961).

We are aware that in cases factually similar to this one, Rule 15(c) Federal Rules of Civil Procedure has been applied, enforcing a test more stringent than the Louisiana rule. Craig v. United States, 413 F.2d 854 (9th Cir. 1969); cert. den. 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451; *cf.*, Meredith v. United States, 41 F.R.D. 34 (S.D.Cal.1966). Rule 15(c) permits a supplemental complaint to "relate back" to the original date when the new party named: 1) has received such notice of the institution of the action that he will not be prejudiced; and 2) knew or should have known that but for the mistake concerning the identity of the proper party, the action would have been brought against him.

▬ Assuming *arguendo* that Rule 15(c) applies to additional as well as misnamed parties, *contra* People of the Living God v. Star Towing Co., 289 F. Supp. 635 (E.D.La.1968), we still find no conflict between Rule 15(c) and the Louisiana tolling rule. The Louisiana rule does not deal with the "relation back" doctrine at all but simply interrupts the running of prescription against any solidary obligor once the suit is filed. In addition, the purpose of Rule 15(c) is to provide relief from harsh state rules in cases where the applicable state law would bar the amended complaint. 3 Moore's Federal Practice, § 15.15(2) (2d Ed. 1968); 6 Wright and Miller, Federal Practice and Procedure, § 1498 (1971). We have discovered no cases which construe Rule 15(c) to bar the amended complaint in the face of a state rule allowing the complaint.[2]

b) Sheriff's Liability

Sheriff Heyd and his insuror move that they be dismissed from this lawsuit

---

1. We pretermit the question of whether this limitation applies to this particular case, *see* Webb v. Zurich Ins. Co., 194 So.2d 436 (La.App.1966), reversed on other grounds, 251 La. 558, 205 So.2d 398 (1967), or to § 1983 actions in general, *see*, Sostre v. Rockefeller, 312 F. Supp. 863, 887 (S.D.N.Y. 1970), reversed 442 F.2d 178 (2d Cir. 1971).

2. It is noteworthy that Sheriff Heyd's office conducted a thorough investigation of Williams' death at the time and so the amended complaint would be allowed under at least one interpretation of Rule 15(c). *See*, Wright and Miller, *supra*, § 1498.

on the grounds that no negligence is alleged against the sheriff personally but only against his deputies. They also note that if Sheriff Heyd cannot be held liable, then he cannot be a joint tortfeasor or solidary obligor for the purpose of allowing a third-party complaint or tolling the running of prescription. The argument is based on the general proposition that in cases where monetary damages are sought under § 1983, the doctrines of *respondeat superior* or imputed negligence do not apply and personal involvement of the defendant is always required. This Court does not agree with that proposition.

In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court stated that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." This phrase has generally been construed to mean that the courts must look to general tort principles to decide issues of liability under § 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). *See generally,* Note, Choice of Law Under Section 1983, 37 U.Chi.L.Rev. 794 (1970); Comment, Civil Action for Damages Under the Civil Rights Act, 45 Tex.L.Rev. 1015 (1967); Shapo, Constitutional Tort: Monroe v. Pape and the Frontier Beyond, 60 N.W.U.L.Rev. 277 (1965). This is accomplished, when possible, by looking to state law as long as that law furthers the purposes of the statute. Sullivan v. Little Hunting Park, *supra*; Pierson v. Ray, *supra*; Carter v. Carlson, 447 F.2d 358 (D.C. Cir. 1971); Brazier v. Cherry, *supra*. However, the limitations of state law are no bar to a remedy when they are contrary to general tort rules. Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965).

The Fifth Circuit has recognized that vicarious liability has a place in the tort rules applicable to § 1983.[3] In Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963), the court stated:

"In connecting the acts with the Defendants, civil liability for money damages of the respective Defendants would depend on traditional tort principles . . . . [L]iability of the respective individuals as to such conduct would stand or fall on jury findings, express or implied, showing personal action or that imputed by conspiracy, agency, partnership, respondeat superior, or the like." *Id.* at 125. *Cf.,* Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969).

In fact, the Fifth Circuit has specifically held that under § 1983 a deputy sheriff's actions could be imputed to the sheriff when that was the law of the state involved. In Lewis v. Brautigam, 227 F.2d 124 (5th Cir. 1955), two deputy sheriffs allegedly removed the plaintiff from the county jail to prevent him from conferring with his attorney in preparing a defense for his murder trial. Florida law provided that the acts of a deputy sheriff could be imputed to the sheriff. The trial court dismissed the case for failure to state a claim. The Court of Appeals, citing the applicable Florida provision, remanded for trial against all parties, specifically including the sheriff. The Sixth Circuit very recently faced the same question and also held the sheriff liable. McDaniel v. Carroll, 457 F.2d 968 (6th Cir. 1972). In *McDaniel,* the plaintiff was shot by a deputy sheriff who was attempting to serve an arrest warrant. Since Tennessee law made a sheriff and his surety liable for both compensatory and punitive damages for torts committed by a deputy sheriff in the performance of his

---

3. The Fourth Circuit has shown no hesitation to impose § 1983 liability on corporations for the acts of their employees when the other requirements of the Civil Rights Act have been met. Williams v. Howard Johnson's of Washington, 323 F.2d 102 (4th Cir. 1963); Flemming v. South Carolina Electric and Gas Co., 224 F.2d 752 (4th Cir. 1955). In addition, one district court has expressly held that § 1983 incorporates the common law doctrine of *respondeat superior.* Hill v. Toll, 320 F.Supp. 185 (E.D.Pa. 1970).

duties, the court allowed recovery of punitive damages against the non-participating sheriff under § 1983.

 Louisiana law makes a sheriff liable for all the acts and omissions of his deputies which result from the wrongful execution of the deputies' official duties. Precisely speaking, this liability does not result from the doctrine of *respondeat superior* but arises from the sheriff's official status. In the leading case of Gray v. DeBretton, 192 La. 628, 188 So. 722 (1939), the Louisiana Supreme Court said:

> "[N]o liability attaches to the defendant sheriff under the doctrine of respondeat superior, or under the doctrines of master and servant and principal and agent. The relation between a sheriff and his deputy is an official and not a private relation. The deputy is not a representative of the sheriff in his individual capacity, but he is a public officer whose authority and duty are regulated by law. As to the public, whose servants these officers are, the acts and omissions of a deputy sheriff are the acts and omissions of the sheriff himself. So far as the responsibilities of the office are concerned, the sheriff is liable for the acts and omissions both of himself and his deputy." 188 So. at 724.

*See also,* Nielson v. Jefferson Parish Sheriff's Office, 242 So.2d 91 (La.App. 1970); Gates v. Hanover Ins. Co., 218 So.2d 648 (La.App.1969) and cases cited therein; Webb v. Zurich Ins. Co., 194 So.2d 436 (La.App.1966), reversed on other grounds, 251 La. 558, 205 So.2d 398 (1967); Polizzi v. Trist, 154 So.2d 84 (La.App.1961); Brown v. City of Shreveport, 129 So.2d 540 (La.App. 1961); Jackson v. Steen, 92 So.2d 280 (La.App.1957). Since Louisiana holds jailors to a high standard of care toward ill and disabled prisoners, there is no question that the alleged negligence in this case, if proven, would constitute the improper performance of an official duty. *See,* Rhodus v. City-Parish Govt.

of City of Baton Rouge, 253 So.2d 537 (La.App.1971); Shuff v. Zurich-American Ins. Co., 173 So.2d 392 (La.App. 1965).

 The application of general tort law, instead of Louisiana law, to this case does not vary the result. It is true that the general common law rule is that public officers are not liable for the acts of their subordinates unless they directed, participated in, or ratified a tortious act. 4 McQuillin, Municipal Corporations 208–11 (3rd Ed. 1949). This doctrine is theoretically based on the premise that subordinate officials are not servants or agents of their superiors, but are rather public servants, independently responsible to the common weal. Antin v. Union High School Dist., 130 Or. 461, 280 P. 664 (1929). Practically, this immunity stems from the fear that:

> "To permit recovery [against the superior] . . . would be to establish a principle which would paralyze the public service. Competent persons could not be found to fill positions of the kind, if they knew they would be held liable for all the torts and wrongs committed by a large body of subordinates." Robertson v. Sichel, 127 U.S. 507, 515, 8 S.Ct. 1286, 1290, 32 L.Ed. 203 (1888).

The common law, however, excepted some officials, most notably sheriffs, from the general rule against vicarious liability. City of Duluth v. Ross, 140 Minn. 161, 165, 167 N.W. 485, 486 (1918). W. Anderson, A Treatise on the Law of Sheriffs, Coroners and Constables, § 61 (1941). A sheriff is liable by the weight of authority for any act of his deputy committed by virtue of, or under color of, his office. *Anderson, supra*; Chaudoin v. Fuller, 67 Ariz. 144, 192 P.2d 243 (1948); *but see,* Marshall v. County of Los Angeles, 131 Cal.App. 2d 812, 281 P.2d 544 (1955). Vicarious liability is not extended to other officers, such as police chiefs and prison wardens, who perform work similar to

that of a sheriff because these other officials do not have the free hand the sheriff typically enjoys in appointing and discharging subordinates. *See,* Van Vorce v. Thomas, 18 Cal.App.2d 723, 64 P.2d 772 (1937); Pavish v. Meyers, 129 Wash. 605, 225 P. 633 (1924); Lunsford v. Johnston, 132 Tenn. 615, 179 S.W. 151 (1915); Casey v. Scott, 82 Ark. 362, 101 S.W. 1152 (1907).

 As far as we can see, none of the policies furthered by the common law's reluctance to impose vicarious liability on public officials would be served by making the sheriff immune in the instant case. Deputy sheriffs have not been traditionally considered independent public servants to the extent necessary to cut off their supervisor's liability. Practically, it is difficult to believe that making the sheriff liable for his deputies under § 1983 would greatly deter competent people from seeking the job when that same liability already exists under state law. Moreover, Louisiana sheriffs have complete control over the appointment and discharge of their deputies. LSA–R.S. § 33:1433; Opinion, Louisiana Atty.Gen.1940–42, p. 4480.

The common law distinction between sheriffs and other public officials has been carried over to § 1983. In Jordan v. Kelly, 223 F.Supp. 731 (W.D.Mo. 1963), the court, following general tort law, held a chief of police not liable for the acts of his subordinates but noted that no such rule existed for "sheriffs, constables, marshals or other peace officers." 223 F.Supp. at 737. Nevertheless, we have been cited a number of cases for the proposition that since "there is no doctrine of *respondeat superior* under § 1983," the sheriff has no

potential liability in this case. Adams v. Pate, 445 F.2d 105 (7th Cir. 1971); Barrows v. Faulkner, 327 F.Supp. 1190 (N.D.Okl.1971); Bennett v. Gravelle, 323 F.Supp. 203 (D.Md.1971); Sanberg v. Daley, 306 F.Supp. 277 (E.D.Ill. 1969); Roberts v. Williams, 302 F.Supp. 972 (N.D.Miss.1969); Mack v. Lewis, 298 F.Supp. 1351 (S.D.Ga.1969); Patrum v. Martin, 292 F.Supp. 370 (W.D. Ky.1968); Runnels v. Parker, 263 F. Supp. 271 (C.D.Cal.1967); Salazar v. Dowd, 256 F.Supp. 220 (D.Colo.1966).

Of the nine cases listed above, five deal with police supervisors and rely directly on *Jordan, supra,* a case which expressly excluded sheriffs from its holding. Of the others, Roberts v. Williams, *supra,* concerns a county prison director and is based on general tort law and the law of Mississippi. Bennett v. Gravelle, *supra,* refuses to apply *respondeat superior* to sanitation commissioners, citing *Jordan* and another police case. Adams v. Pate, *supra,* concerns a prison warden. Only Barrows v. Faulkner, *supra,* holds that a sheriff is not liable for the acts of his deputies under § 1983. In that case, the sheriff, as in the present case, was liable under state law. The *Faulkner* court, noting that the plaintiff admitted that the sheriff could not be held liable for the acts of his subordinates under *respondeat superior,* relied on one of the aforementioned police cases [4] to prove the point. Our opinion in this case indicates why that reliance was in error.

Accordingly, it is the order of the Court that the motions of defendants Heyd and Interstate Fire and Casualty to dismiss the third-party complaint and to dismiss the amended complaint, be, and the same are hereby, denied.

---

4. Sanberg v. Daley, 306 F.Supp. 277 (E.D.Ill.1969).