**William W. KYLES et al.**

v.

**CALCASIEU PARISH SHERIFF'S DEPARTMENT.**

**Civ. A. No. 74–689.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

June 26, 1975.

Norbert A. Simmons, New Orleans, La., for plaintiff.

William R. Tete, Jones, Kimball, Patin, Harper & Wetherill, Lake Charles, La., for defendant.

NAUMAN S. SCOTT, District Judge:

Plaintiff, a former deputy in the Calcasieu Parish, Louisiana Sheriff's Office, has brought this suit seeking redress for alleged discrimination in employment. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. C. 2000e *et seq.* (Title VII), 42 U.S.C. 1981 and the Fourteenth Amendment. Title VII provides for injunctive and other relief against racial discrimination in employment. 42 U.S.C. 1981 provides that all persons shall have the right, *inter alia*, to make and enforce contracts, and to the full and equal protection of all laws for the security of persons and property. The Fourteenth Amendment prohibits the states, *inter alia*, from denying citizens the right to liberty or property without due process of law.

The defendant has filed a motion to dismiss for lack of jurisdiction. Oral testimony and written evidence were introduced on the question of jurisdiction, in addition to the pleadings in the record. The Court will thus regard this motion as a motion for summary judgment on behalf of the defendant, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

As we note in greater detail below, the relationship between plaintiff and defendant is central to the issue of coverage under Title VII, Section 1981, and the Fourteenth Amendment.

## THE THRESHOLD QUESTION: THE RELATIONSHIP BETWEEN A SHERIFF AND A DEPUTY SHERIFF

The Louisiana Constitution of 1921, Article VII, Section 65, provides for election of a sheriff in each parish of the state. The same provision is carried over as Article V, Section 27, of the Louisiana Constitution of 1974. L.R.S. 33:1433 provides that the sheriff in each parish may appoint as many deputies as necessary, or as are authorized by law. In addition, before entering on their duties, the deputies are to take the oath of office required of state officials and must furnish a bond for the faithful performance of their duties.

Article 331 of the Louisiana Code of Civil Procedure provides that a deputy sheriff possesses all the powers and authority granted by law to the sheriff, and may perform any of the duties and exercise any of the functions of the sheriff, subject to the direction and supervision of the sheriff. Thus, as far as power and authority to enforce the law, vis-a-vis the public, there is no difference between a sheriff and his deputies. article 334 of the Louisiana Code of Civil Procedure provides that a sheriff or deputy sheriff who neglects, fails or refuses to perform any of the ministerial duties assigned to him may be subject to punishment for contempt of court. In this regard, deputies stand in the ex-

act position of sheriffs. The Louisiana Constitution of 1921, Article XIV, Section 15(G)(a)(1), carried into the Louisiana Constitution of 1974 as Article X, Section 2(B)(10) and Article V, Section 27, specifically exempts deputies from the state classified civil service laws.

The testimony of plaintiff at the hearing on May 15, 1975 indicates that a new oath was given, a new bond was signed and a new commission was issued at the end of each term of office of Sheriff Reid every four years. In other words, although the same person was re-elected as sheriff at each of several elections, the deputies were reappointed and recommissioned after each term of office.

The Courts in Louisiana have recognized that the relation of sheriffs and deputies is not that of employer and employee. In *Thompson v. St. Amant*, 250 La. 405, 196 So.2d 255 (1967), a deputy sued an individual for libel. The Louisiana Supreme Court there held that the relation between a sheriff and his deputy is an official and not a private relation. The deputy is a representative of the sheriff in his official capacity, and as such is a "public officer" or "public official" (as opposed to a "public employee"), and as far as the public is concerned, the acts of a deputy are the acts of the sheriff himself. Thus, for purposes of the libel suit, the same rule applied to the deputy as would apply to the sheriff or other "public officer".

In *Williams v. United States*, 353 F. Supp. 1226 (E.D.La.1973), the Court noted that Louisiana law makes a sheriff liable for acts or omissions of his deputies which result from the wrongful execution of the deputies' official duties. This liability does not arise from the doctrine of "respondeat superior" but rather from the official status of the sheriff and his deputy. Again, the Court noted that the relation between a sheriff and his deputy is an official, not a private relation. See authorities cited at 353 F.Supp. 1233.

The *Williams* court quoted from the leading case of *Gray* v. *DeBretton*, 192 La. 628, 188 So. 722 (1939), where the Louisiana Supreme Court said:

"No liability attaches to the defendant sheriff under the doctrine of respondeat superior or under the doctrines of master and servant and principal and agent. The relationship between a sheriff and his deputy is an official and not a private relation. The deputy is not a representative of the sheriff in his individual capacity but he is a public officer whose authority and duty are regulated by law. As to the public, whose servants these officers are, the acts and omissions of a deputy sheriff are the acts and omissions of the sheriff himself. So far as the responsibilities of the office are concerned, the sheriff is liable for the acts and omissions both of himself and his deputies." 188 So. at 724.

Although *Williams* dealt specifically with a sheriff's vicarious liability for his deputy's actions under 42 U.S.C. 1983, it nevertheless illustrates the relationship between the two offices. There it was held that under both common law and Louisiana law a sheriff is excepted from the rule against vicarious liability because of the personal nature of the relationship between the sheriff and his deputies.

Plaintiff was not under a contract of employment. There is no evidence of a written contract. Neither is there any evidence of the elements which might give rise to a quasi contract. As noted above, the deputy's commission expires with the sheriff's term of office. Thus, at the very most, plaintiff could have an expectation of continuing his service only until the sheriff's current term expires. The evidence established that there exists no seniority system in the office by which assignment to a particular job, promotions or pay raises are granted. All of these incidences of service are entirely discretionary in the sheriff. Even if plaintiff had a reasonable expectation of continuing his serv-

ice for the term of office of the sheriff, he certainly had no expectation of continuing a specific job assignment, or of obtaining promotions or raises in any established manner. Thus, the "reasonable expectation" necessary to establish quasi contract did not exist. There simply was no contract of any kind.

■ From the foregoing it is clear that under the applicable Louisiana law and the facts of this case, plaintiff was not an "employee" of the Calcasieu Parish Sheriff's Office. The relationship is much more personal; it is an appointor-appointee relationship. There is no such person as a career deputy because the deputy is appointed to fill a term of four years or less to coincide with the term of the appointing sheriff. He has and can earn no right to or prospect of promotion or reappointment. He is not subject to civil service. No contractual rights are involved. The deputy is not an employee but is, rather, an appointee.

### THE PLAINTIFF'S CLAIM UNDER TITLE VII, SECTION 1981 AND THE FOURTEENTH AMENDMENT

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, provides redress for discrimination in employment. The Act prohibits certain practices by employers against their employees, such as discriminatory hiring and promotion. But there is a characteristic personal quality in the appointment of a public official which is entirely lacking in the "hiring" of a public employee. Because of the same personal quality, an appointee is not *promoted* on the basis of objective criteria or seniority, he is *appointed* to the higher position. No sheriff is bound by objective criteria in making the appointment. All of the prohibitions and all of the remedies provided by Title VII are framed in terms of an employer-employee relationship which simply does not exist in the sheriff-deputy relationship.

In *Wilson* v. *Kelly*, 294 F.Supp. 1005 (N.D.Ga.1968), in footnote 6, the Court noted:

"In the elective-appointive area, however, the process is entirely political. Each elected official must rise and fall on his performance and that of his appointed assistants. The courts would not presume to tell the President, or Governor, a Senator or Congressman that there are limitations on his cabinet or staff appointments. Similarly, other elected officials (such as the Sheriffs here) have freedom to choose such subordinates. The growing number of Negro appointees in Georgia is proof that such lack of discrimination is politically sage. Nevertheless, the power of an elected official to appoint freely appears inviolate, and the risk is his own choice.

"Thus, pending further Congressional action or clarification by the courts, logic would dictate that the Fourteenth Amendment right to public employment is hybrid, existing in the civil service-competitive-merit area and not existing in the elective-appointive area."

■■ We recognize that this statute is not to be strictly construed, but rather is to be given a broad construction. *Parham* v. *Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970); *Georgia Power Co.* v. *Equal Employment Opportunity Commission*, 412 F.2d 462 (5th Cir. 1969). Nevertheless, an employer-employee relationship is an essential element of coverage under the Act. There is no such relationship here. We hold therefore that this Court is without jurisdiction over those portions of the complaint which would rest on Title VII.

42 U.S.C. 1981, originally part of the Civil Rights Act of 1866, provides that all persons within the jurisdiction of the United States, shall have the same right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws for the security of persons and property as is en-

joyed by white citizens. These acts were originally passed by Congress to implement the provisions of the Thirteenth and Fourteenth Amendments. However, for many years these statutes remained unused.

*Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), revived these statutes. That case specifically dealt with the portion of the Civil Rights Act of 1866 which is now 42 U.S.C. § 1982, guaranteeing the right to hold property. However, in footnote 78 of that opinion, the Court also noted that "the right to contract for employment [is] a right secured by 42 U.S.C. 1981 . . . ". Following this, a number of courts have held that Section 1981 provides a remedy for interference with employment contracts, both public and private. *Long* v. *Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974); *Sanders* v. *Dobbs Houses, Inc.*, 431 F.2d 1097 (5th Cir. 1970); *Waters* v. *Wisconsin Steelworks, etc.*, 427 F.2d 476 (7th Cir. 1970). Essential to this remedy is some contractual employment relationship.

Thus, in *Long* v. *Ford Motor Co.*, *supra*, the Sixth Circuit noted that when a person sues under this statute to enforce his right not to be discriminated against, he must show that he was unable to make or enforce a contract that white citizens were able to make or enforce. Thus, if an employee's contract of employment is interfered with solely on the basis of race, that interference is illegal under this section, and the aggrieved employee has an action for redress of interference with his right to contract. Applied to the facts of the case before us, plaintiff must show some interference with a contractual right.

Here, there was no contract. There was an appointment of a public official. Since this is true, there is nothing which Section 1981 can protect and this Court is without jurisdiction over the portions of the complaint which assert Section 1981 claims.

Plaintiff, in his amended complaint, has also asserted as a basis for his suit the Fourteenth Amendment. This Amendment, of course, prohibits the states from depriving citizens of life, liberty or property without due process of law.

A number of cases have held that a public employee, absent some property interest evidenced by a contract or reasonable expectation of continued employment, has no Fourteenth Amendment claim for discharge. Thus, in *Board of Regents* v. *Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court said:

"The requirements of procedural due process apply only to the deprivation of interests encompassed within the Fourteenth Amendment's protection of liberty and property . . . but the range of interests protected by procedural due process is not infinite." 408 U.S. at 569, 92 S.Ct. at 2705.

The Court then proceeded to determine that, absent some sort of statutory tenure or contractual rights, a public employee has no interest cognizable at law necessitating due process. And in *Harnett* v. *Ulett*, 466 F.2d 113 (CA–8 1972), the Court, referring to *Roth* and its companion case *Perry* v. *Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), noted:

"*Roth* and *Sinderman* adhere to the principle that absent contractual, legislative or constitutional provision on the subject, *the power of removal is incident to the power of appointment, and government employment can be revoked at the will of the appointing officer.*" 466 F.2d at 116–117 (emphasis added).

█ We have held that plaintiff was not an employee of the Sheriff's Office and that there was no contract. Accordingly, applying the holdings of the cases cited above, we find that we are without jurisdiction over the plaintiff's Fourteenth Amendment claims.

SUMMARY

The appointment of plaintiff as a deputy was a political appointment. Plaintiff was a "public official", not a "public employee". The elements necessary to exercise jurisdiction under Title VII, under Section 1981 and under the Fourteenth Amendment simply do not exist. The facts material to the issue of jurisdiction are not in dispute. We find as a matter of law that we do not have jurisdiction. Summary judgment is granted in favor of the defendant and the complaint is dismissed.

These findings and conclusions will serve as a judgment in this proceeding.