**R. Richard SLACK**

v.

**M. Bolivar BISHOP, Ray Leach, Royce Williams and Noel V. Stanley.**

Civ. A. No. 770251.

United States District Court, W. D. Louisiana, Lake Charles Division.

Jan. 24, 1978.

---

R. Richard Slack, in pro. per.

David R. Lestage, DeRidder, La., for defendant.

## OPINION

VERON, District Judge:

Plaintiff brings this action seeking to redress certain rights he claims were violated by defendants.

Plaintiff brings this action, pursuant to 42 U.S.C.A. § 1983, to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

The court has jurisdiction under 28 U.S.C.A. § 1343. Plaintiff seeks declaratory relief pursuant to 28 U.S.C.A. § 2201 and § 2202.

Plaintiff, a former inmate at the Beauregard Parish Jail, alleges that on the night of July 8, 1976, he was taken out of his cell and beaten by Deputy Sheriff Ray Leach and Trustee Noel V. Stanley. At the trial plaintiff called all of defendants as witnesses, as well as his mother and the attorney who had represented him at his prior criminal proceedings.

Mrs. Pearl Casanovas, plaintiff's mother, testified that plaintiff had complained to her about having been sent to Leesville, Louisiana. He had also complained that defendants had beaten him. Also excessive salt had been placed in his food and hot water had not been provided for taking showers.

Paul Jantz, an attorney, testified that plaintiff had told him that he was shoved against the wall and held by the throat by Deputy Leach, and that Leach had told Trustee Noel V. Stanley to strike the plaintiff. Plaintiff also told Mr. Jantz that he had been sent to Leesville because he had been "a problem."

Deputy James Longoria was called as a witness and testified that he had taken plaintiff to the hospital. He stated that when he returned the plaintiff another inmate, Billy Daniels, complained about an injury over his eye. Deputy Longoria then took Daniels to the hospital and brought him back. During this period of time, Deputy Longoria learned that plaintiff had struck Billy Daniels.

Deputy Cullen Ray Carver of the Vernon Parish Sheriff's Department testified that he had received and booked plaintiff in Leesville on July 9, 1976. Carver also testified that plaintiff had been allowed to make a telephone call.

Sheriff M. Bolivar Bishop testified that he first learned of the incident the following morning when he was told upon arriving at his office. After being advised of plaintiff's fight with Billy Daniels, he concurred with the jailer's request that plaintiff be sent to Leesville because he was a troublemaker. Sheriff Bishop stated that trustees are selected on the basis of the type of crime with which they are charged, their attitude and their demeanor and appearance. Their duties include clean-up and kitchen work. The are not authorized to handcuff or to spray mace on prisoners.

Defendant/Deputy Royce Williams was the chief jailer at Beauregard Parish Jail and did not become aware of the incidents of July 8, 1976, until he arrived at work on July 9. Mr. Williams stated that he was in charge of selecting trustees and that he had selected those whom he felt would follow orders. Williams stated that Trustee Stan-

ley was never locked up. He also stated that plaintiff complained almost continually, especially about Trustee Stanley. Deputy Williams also testified that the plaintiff complained that Billy Daniels had put excessive salt in his food; Williams investigated and discovered that another prisoner had been responsible. Deputy Williams further testified that plaintiff had said that he (Williams) had never done anything to him and that if he were to win the suit, he would give Williams his money back. At another time, plaintiff told Williams that he had been sued simply because he was chief jailer and not because he had done anything wrong.

Trustee Noel V. Stanley was called under cross examination by plaintiff. He stated that when he went up to plaintiff's cell, plaintiff told a story of having slipped in the shower and thereby having hurt his hand. Stanley testified that after plaintiff had been treated at the hospital and returned, Stanley accompanied Deputy Ray Leach to plaintiff's cell in order to assist in moving plaintiff to the death cell. Plaintiff resisted, and when he attempted to kick Deputy Leach in the groin, Deputy Leach grabbed plaintiff by the front of his clothes and shoved him against the wall. Plaintiff also attempted to kick Stanley in the groin, at which time Stanley slapped the plaintiff. Stanley clearly stated that he did not hit plaintiff with a ring of keys. In fact, Stanley stated that he only carried keys from 8 o'clock A.M. until 4 o'clock P.M. He also denied other allegations made by plaintiff concerning the use of mace and the turning off of hot water.

Deputy Ray Leach was called by plaintiff and testified concerning the shower story and the taking of plaintiff to the hospital. After plaintiff returned, Deputy Leach took Billy Daniels to the hospital. Upon returning from the hospital, Billy Daniels did not want to go back to the same cell because the other prisoners had threatened him and plaintiff had hit him with a shoe. Deputy Leach stated that he shoved plaintiff against the wall when plaintiff resisted moving to another cell by kicking and cursing. He stated that he did not hit Slack but that Stanley had slapped Slack for Stanley's and Leach's own protection. He and Stanley then each grabbed one of Slack's arms and brought him to the death cell.

Plaintiff took the stand and testified on his own behalf. He admitted fabricating the story of how he had hurt his hand. He stated that he did not want to leave the cell he was in and that Deputy Leach threw him against the wall, choked him and hit him twice. At the same time, Trustee Stanley hit him in the head with keys. He claimed that his eye was swollen slightly and that he had a small cut on his head which was not visible because of his hair. He also testified that excessive salt had been put in his food, mace had been sprayed on prisoners and no hot water had been available for showers. Mr. Slack admitted under cross-examination that his record included prior convictions for forgery and attempted simple burglary, both felonies. He also stated that he was in jail at the time of this incident for armed robbery. He was later convicted and sentenced to 25 years at hard labor.

Defendants called Mrs. Nelda Barnett, a deputy sheriff from Vernon Parish. She testified that on July 9, 1976, Slack arrived in Leesville and came to her office to use the telephone. She stated that he was no more than 3 feet from her and that she did not see any bruises on Mr. Slack's face.

After this matter had been heard and oral arguments made, the Court rendered an oral decision from the bench in favor of Slack and against Deputy Leach and Trustee Noel V. Stanley for $100. The Court based its decision on the belief that Trustee Stanley had been acting outside the course and scope of his authority. Upon reconsideration and notice to the parties, the Court held a new hearing and advised the parties that it felt that it had been in error as to the status of Mr. Stanley. The Court therefore advised the parties that it was revising its ruling and would render a written opinion.

## FINDINGS OF FACT

1. R. Richard Slack and Billy Daniels were inmates in Beauregard Parish Jail on July 8, 1976.

2. R. Richard Slack and Billy Daniels engaged in a fight in the cell they were occupying on the evening of July 8, 1976.

3. R. Richard Slack injured his wrist and Billy Daniels injured an area over his eye.

4. After the fight, the two participants, along with the rest of their cellmates, agreed that when deputies were called to care for Slack's wrist they would be told that Slack had hurt his wrist when he slipped in the shower.

5. Deputies were called and were told the story concerning a fall in the shower. They took Slack to the hospital where his wrist was x-rayed. A doctor found no more than a sprained wrist and Slack was advised to soak it.

6. When Slack was brought back from the hospital, Daniels then disclosed his eye injury and stated that it was also caused by a fall in the shower.

7. After Daniels received medical treatment, the deputies learned the real cause of the injuries.

8. Deputy Ray Leach and Trustee Noel V. Stanley went to get Slack to place him in a security (death) cell.

9. When the deputy and trustee attempted to move Slack, he began cursing and resisting the move. In the course of Slack's resisting, Deputy Leach took hold of the front of Slack's clothes and shoved Slack against the wall. Slack then began to kick Deputy Leach in the groin.

10. Trustee Noel V. Stanley slapped Slack on the side of the face and Slack settled down. He was placed in the security (death) cell.

11. Slack's face showed no visible signs of injury the next morning.

## CONCLUSIONS

■ There is insufficient evidence to support plaintiff's alleged causes of action two (2) through seven (7), and they are hereby dismissed. The gravamen of plaintiff's claim is that Stanley, in fulfilling his duties as a trustee, exceeded whatever authority he may have had by striking the plaintiff across the face. Plaintiff also asserts that Sheriff Bishop and Deputy Leach are responsible for the actions of the trustee. A deputy sheriff is an appointee of the sheriff and the relationship of sheriffs and deputies is not that of employer and employee. *Kyles v. Calcasieu Parish Sheriff's Dept.*, 395 F.Supp. 1307 (W.D.La.1975). A deputy is not under a contract of employment. Such conditions of employment as raises, promotions, job assignments and tenure are controlled by the sheriff and are completely within the sheriff's discretion. Until very recently however, it was the law that, "as to the public, whose servants these officers are, the acts and omissions of a deputy sheriff are the acts and omissions of the sheriff himself." *Gray v. De Bretton*, 192 La. 628, 188 So. 722, 724 (1939). This vicarious liability did not arise from the doctrine of respondeat superior. Rather, it resulted from the official status of the sheriff and his deputy, and from the official nature of their relationship. (*Gray v. De Bretton*, supra; *Williams v. United States*, 353 F.Supp. 1226 (E.D.La.1973).) Thus, *Kyles* concluded that, "the deputy is a representative of the sheriff in his official capacity . . . and as far as the public is concerned, the acts of a deputy are the acts of the sheriff himself." *Kyles*, supra at 1309.

■ The Supreme Court of Louisiana has now clearly abolished this general rule of liability of a sheriff for actions of his deputies performed in the course and scope of their official duties. *Foster v. Hampton*, 352 So.2d 197 (1977). The Court relied on R.S. 33:1433 which reads, in pertinent part, as follows:

" . . .

No sheriff of any parish of this state, nor his sureties, shall be liable for any act or tort committed by one of his deputies, or by any person commissioned as deputy sheriff by him, beyond the amount of the bond or limits of liability in insurance furnished by said deputy sheriff, unless said deputy sheriff in the commission of

the said act or tort, *acts in compliance with a direct order of, and in the personal presence of, the said sheriff, at the time the act or tort is committed.*" (Emphasis added).

According to the Court, "The statute contemplates personal liability of the sheriff *for those acts he personally controls*; for such acts the legislature has determined that the sheriff should be answerable." (Emphasis added) *Foster,* supra at 201. Thus, while *Kyles* accurately defines the relationship between a sheriff and his deputies as not being one of an employer to his employees, R.S. 33:1433 and *Foster* clearly over-rule *Gray v. De Bretton* and its progeny by severely limiting the liability of a sheriff for his deputy's acts.

▉ It appears to this Court that the position of a trustee vis-à-vis the sheriff is very similar to that of a deputy sheriff. A trustee is appointed by the sheriff and retains his position and privileges only by the grace of the sheriff. While carrying out his functions, the trustee's duties are shaped, defined and, if necessary, altered by the sheriff or his deputies. A trustee's position may therefore be described as being that of a "quasi-deputy" with many of the same legal ramifications as those resulting from the actions of a deputy. That is, a sheriff is responsible for the acts and omissions of the trustees whom he appoints when they are acting within the course and scope of their official duties to the same extent that he would be responsible for the acts of his deputies.

▉ It is equally true, however, that so long as a trustee is acting within the course and scope of the obligations of his position he benefits from the same immunities which are enjoyed by a deputy sheriff. A determination of whether or not a trustee's actions are in fact within the course and scope of his functions must be made on a case by case basis. Thus, in a situation in which it is clearly within the parameters of a trustee's duties to maintain order in a prison or to protect a deputy under whom he is working, the trustee may use the same amount of force which an actual deputy could legally and reasonably exercise in fulfilling the same functions.

▉ It should be noted, however, that we do not mean to indicate that a trustee is possessed of unfettered power simply because he is "following orders." The trustee's actions must not only be within the course and scope of his duties, they must be reasonable under the facts and circumstances of each individual case. In instances in which a trustee is ordered to perform a task which is illegal, and which would clearly be illegal and unacceptable even if performed by an actual deputy (such as unprovoked brutality or the use of unnecessary force), the trustee will be held accountable for his actions, as will his supervising deputy. Of course, a trustee who goes beyond the limits of the authority and duties which are within the course and scope of his position will be held personally and solely liable for his abuses.

▉ In the instant case defendant/Stanley's duties obviously included the maintaining of order and the protection of Deputy Leach during the process of moving the plaintiff from one cell to another. The evidence indicates that the plaintiff was violent and unruly during this procedure and that the force used by Stanley in subduing the plaintiff would clearly have been reasonable had Leach used the same type and amount of force. Upon reconsideration of our previous decision we now hold that Stanley did not exceed the course and scope of his authority and that his actions were reasonable and lawful under the circumstances of the instant case. Further, since the other defendants did not request or tacitly require Stanley or Leach to perform any function which they themselves could not have reasonably and legally done as part of their official duties, we hold that plaintiff's demands against them must be rejected.