UNITED STATES of America, Plaintiff,

v.

**Jay GREGORY, Sheriff of Patrick County, Defendant.**

**Civ. A. No. 83–0094–D.**

United States District Court,
W.D. Virginia,
Danville Division.

March 21, 1984.

John M. Gadzichowski, Senior Trial Atty., Melissa P. Marshall, Trial Atty., Dept. of Justice, Civ. Rights Div., Washington, D.C., for plaintiff.

Anthony P. Giorno, Stuart, Va., for defendant.

## MEMORANDUM OPINION

KISER, District Judge.

The United States brought this action on June 29, 1983, against Jesse W. Williams in his official capacity as Sheriff of Patrick County, alleging that the Sheriff of Patrick County has engaged and continues to engage in employment practices that discriminate against women and deprives them of employment as deputies in the Sheriff's Department. The case was properly referred to the Department of Justice by the Equal Employment Opportunity Commission (EEOC). A charge of discrimination was filed with the EEOC by Doris Scales on July 30, 1980, alleging that Sheriff Williams unlawfully refused to hire her in May, 1980 as a deputy on the basis of her sex.

Sheriff Williams was elected in November of 1979 and assumed office on January 1, 1980. He served as Sheriff until January 1, 1984, when Jay Gregory assumed that office as a result of his defeating Sheriff Williams in the November, 1983 election. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Jay Gregory was substituted as Defendant in this action. Trial was held on January 11, 12 and 23, 1984 in Danville.

The United States has many legal barriers to overcome in this case [1], not the least of which is the paucity of proof of discrimination. However, because of my ruling on the issue of whether the Sheriff's deputies are "employees" for purposes of Title VII, only those facts necessary for the decision will be discussed. The Defendant raised this issue in a Motion to Dismiss filed on July 29, 1983, a Motion for Summary Judgment filed on December 20, 1983, and a Motion for Directed Verdict at trial.[2] The issue was briefed and argued by the parties, and the case is now ripe for disposition.

■ In his Motions, Defendant argues that the Patrick County Sheriff's Department (PCSD) deputies are not "employees" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f). The question of whether or not a deputy sheriff of Patrick County is an "employee" within the meaning of 42 U.S.C. § 2000e(f) is a question of federal, rather than state, law. It is to be ascertained through consideration of the statutory language of Title VII, its legislative history, existing federal case law, and the particular circumstances of the case at hand. However, state law is

relevant insofar as it describes the position, including the duties of a particular position, and how the holder of such a position is hired, supervised and fired. *Calderon v. Martin County*, 639 F.2d 271 (5th Cir. 1981).

■ Patrick County is a rural county located in Southwest Virginia. Testimony was that the population of the county was approximately 17,000 and the size geographically was 469 square miles. The PCSD has a full-time staff of twenty-two persons, eighteen of whom are designated as "sworn officers" or deputies. Under Sheriff Williams, fifteen of the sworn officers were male, with two being assigned as supervisors, two as investigators, four as road deputies, two as court security deputies, and five as correctional officers. One female was assigned as civil process server [3] and two are assigned as clerk-steno/matrons.[4]

Under Virginia law, the Sheriff is a constitutional officer, elected by the citizens of the county which he serves. Constitution of Virginia, Art. VII, Sec. 4. By statute, deputies are appointed by the Sheriff. Va. Code Ann. § 15.1–48. Under the provisions of this section, the terms of the deputies of constitutional officers in Virginia end with the term of their principal. *Ramey v. Harber*, 431 F.Supp. 657 (W.D.Va.1977), aff'd in part, rev'd in part, 589 F.2d 753 (4th Cir.1978), *cert. denied*, 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979). Va.Code Ann. § 15.1–131.8 establishes minimum qualifications for a deputy sheriff: He must be a citizen of the United States, undergo a background investigation, have

---

1. With the change of sheriffs in the 1983 election, there is a very serious question as to whether the issues presented by the suit are moot. *See Spomer v. Littleton*, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974). The problem of mootness is more acute because the Defendant is sued only in his official capacity (i.e., the Government is not claiming personal liability) and the Government failed to name the Patrick County Board of Supervisors and the State Compensation Commission as defendants.

Moreover, there exists a close question of whether Title VII will withstand a Tenth Amendment challenge. *See EEOC v. Wyoming*,

459 U.S. ——, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983).

2. In order to have a complete record, I deferred ruling on these motions until after the trial, and I now treat all the motions as a motion for directed verdict.

3. This position was eliminated by Sheriff Jay Gregory when he assumed office and the female employee was terminated.

4. Evidence indicated the females were rarely called upon to serve in their sworn capacity as matrons.

a high school education or pass the G.E.D. examination, possess a valid Virginia driver's license, and undergo a complete physical examination. This section also provides that upon the Sheriff's request, the Department of Criminal Justice Services may waive these minimum requirements.

Further, Va.Code Ann. § 15.1–48 provides deputies may discharge any of the official duties of their principal during his continuance in office. This section further provides that a deputy is under the control and supervision of the sheriff and has no civil service protection but serves at the pleasure of the sheriff. Thus, deputies have no expectations of continued employment nor are they covered by the "Policeman's Bill of Rights". Va.Code Ann. § 2.1–116.1, *et seq.* Deputy sheriffs, therefore, have no property interest in their positions as deputies and are not entitled to any due process rights as a result of state law. *See Hutto v. Waters*, 552 F.Supp. 266 (E.D.Va.1982); *Hopkins v. Dolinger*, 453 F.Supp. 59 (W.D.Va.1978).

Under Virginia law, if the state is to help pay the cost, the number and salaries of full-time deputies appointed by the sheriff are fixed by the Virginia State Compensation Board. Va.Code Ann. § 14.1–70 and § 14.1–73.1:2. The selection of the person to fill such positions, however, is wholly within the discretion of the sheriff.

Judge Williams recently delineated the relationship between a sheriff and his deputy in Virginia:

In Virginia ... the relationship between the sheriff and his deputy is such that he is not simply the 'alter ego' of the sheriff, but he is one and the same as the sheriff. The public policy of Virginia with regard to the relationship between the sheriff and his deputy is grounded in the common law and is stated in *Miller v. Jones*, 50 Va. (9 Gratt.) 584 (1853) ... [N]ot only is the sheriff liable civilly for the acts of his deputy in Virginia, but he is also liable criminally and can be fined

for the conduct of his deputy. The most significant parts of the foregoing law which is today the public policy of Virginia are the words that as between a sheriff and his deputy they are as 'one person'. There can be no doubt that the statute regarding the appointment of deputies in Virginia is grounded upon a very good foundation. Since the sheriff is liable absolutely for all the acts of his deputies, the sheriff should have complete and unfettered control over who his deputies are .... *Whited v. Fields*, 581 F.Supp. 1444 at 1454–1455 (W.D.Va. March 5, 1984).

Thus, it is clear that in such a relationship there is a high degree of accountability between a sheriff and deputy and "equates with the confidential relationship of a sheriff deputy's employment." *McBee v. Jim Hogg County*, 703 F.2d 834, 840 (5th Cir.1983). As the court also noted in *McBee* in regard to this relationship in Texas, such accountability raises the public's view of deputies as representatives of the sheriff thereby increasing the necessity for loyalty in that position. This, in my opinion, is also the case in Patrick County, Virginia.

Moreover, being an elected official, the sheriff must depend on his deputies to be his eyes and ears as to public sentiment and opinion. Unofficially, it is the deputy's job to know what is going on in his assigned area of the county that might affect the sheriff favorably or adversely in the eyes of the voting public. A performance of this aspect of the deputy's job is well illustrated by the testimony of Clifford Boyd.

Mr. Boyd, a deputy who was assigned to the area of Patrick County in which Doris Scales lived, reported to the Sheriff that there was a lot of opposition to the appointment of Ms. Scales to a position in the Sheriff's office. The Sheriff relied on this information and declined to give Ms. Scales a job.[5] Boyd's testimony further illus-

---

5. The Government raises an issue about the fact that Ms. Scales was unjustly accused of having a bad moral and credit reputation and asserts there were male deputies with moral or credit records which are just as bad or worse. But this totally misses the point. As an elected official, the Sheriff was concerned with the public's perception—right or wrong—of Ms. Scales.

trates that for a deputy's assigned area of the county, he *is* the sheriff and the problems, complaints, etc. which must be dealt with by the Sheriff in that geographic area of the County are brought to the deputy initially. In a very real and practical sense, the deputies stand for re-election as does the Sheriff himself.

Looking now to the statutory language of the Act, Title VII defines the term "employee" as:

> ... an individual employed by an employer, except that the term "employee" shall not include [1] any person elected to public office in any State or political subdivision of any state by the qualified voters thereof, or [2] any person chosen by such officer to be on such officer's personal staff, or [3] an appointee on the policy-making level or [4] an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. 42 U.S.C. § 2000e(f).

Patrick County deputy sheriffs could conceivably fall into the second or third categories of the exemption, but it appears that No. 2, the personal staff exemption is the most appropriate one. Consequently, I must determine whether the "personal staff" exemption applies in this case.

The legislative history of this section demonstrates that Congress intended that this exemption be construed narrowly.[6] However, it is equally clear from the Senate debate on this issue that the number of persons who might be considered "personal assistants" to an elected official was not as important as their function in relation to the official.[7] At this point, a review of cases in this area is instructive.

In *Ramirez v. San Mateo County District Attorney's Office*, 639 F.2d 509 (9th Cir.1981), the plaintiff sued the county attorney's office because he was not hired as a deputy district attorney. He alleged that he was discriminated against because of his Mexican heritage.

The court discussed many of the cases in deciding whether the position of deputy district attorney is covered by Title VII. The court, relying on the analysis of *Wall v. Coleman*, 393 F.Supp. 826 (S.D.Ga.1975), discussed the distinctive character of the position. Unlike most other county workers in San Mateo County, deputy district attorneys served at the pleasure of their superior, the district attorney, who had plenary power of appointment and removal.

---

**6.** It is the intention of the conferees to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to policy-making positions at the highest levels of the department or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. It is the conferees intent that this exemption shall be construed narrowly. Also, all employees subject to State or local civil service laws are not exempted.
Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 1972 U.S.Code Cong. & Adm.News, p. 2180.

**7.** Mr. JAVITS: The other thing, the immediate advisers, I was thinking more in terms of a cabinet, of a Governor who would call his commissioners a cabinet, or he may have a cabinet composed of three or four executive officials, or five or six, who would do the main and important things. That is what I would define those things expressly to mean. What troubled me yesterday was the idea of getting down to the 'nitty-gritty,' as I ex-

plained to the Senator the 'many assistants.' When I was Attorney General, I employed 500 people. Of those 500 persons, perhaps on the outside 20 would be personal assistants or immediate advisers, but the other 480 would be persons who might be assistants in charge of a particular function, or something like that.
So, if we understand each other on that score, this is entirely satisfactory to me. Do I understand correctly, then, that we agree on this?
Mr. ERVIN: Yes. In other words, I think that the change that has been made makes it clear. 118 Cong.Rec. 4493 (daily ed. Feb. 17, 1972) (statements of Sen. Javits and Sen. Ervin).
The original amendment proposed by Senator Ervin excluded from the definition of the term "employee" only elected officials or any person chosen by such officer to advise him in respect to the exercise of the constitutional or legal powers of his office. S. 2515, 92d Cong., 2d Sess., Amdt. No. 888 (1972). This exemption was obviously expanded after consideration by the Senate and House of Representatives to the four categories of exempted personnel.

Also, unlike others employed by the county, deputies were not subject to the county civil service system. Further, the court found that the exclusive powers of selection and retention indicated that deputies performed to the district attorney's personal satisfaction rather than a more generalized standard. The court concluded that when such a job includes this level of personal accountability to one elected official, it is precisely the sort of job Congress envisioned to be within the "personal staff" of that official and thus exempt from Title VII. 639 F.2d at 513.

The court in *Wall v. Coleman*, 393 F.Supp. 826 (S.D.Ga.1975), discussed the legislative history of the exemption provided by 42 U.S.C. § 2000e(f), finding it was clear that Congress intended to exempt elected officials and their personal staffs. In the case, a female attorney brought suit under Title VII alleging sexual discrimination in the denial of employment as an assistant county district attorney. The court noted that the Act does not define the term "personal staff" and, therefore, to reach the result intended by Congress the words must be interpreted in light of reason and common understanding. The court considered definitions of the term "staff", and ultimately concluded that the position was exempt under 42 U.S.C. § 2000e(f).[8] The court noted the district attorney is authorized by law to delegate to his assistants all or so much of the general authority, duties and responsibilities of his office as he wishes to delegate. Also, the assistants serve at his pleasure and work as his assistants instead of working for all district attorneys of the state or the Attorney General of Georgia. 393 F.Supp. at 829–31.

In *Owens v. Rush*, 654 F.2d 1370 (10th Cir.1981), a former undersheriff in a county sheriff's department alleged he had been unlawfully discharged by the county sheriff because he assisted his wife in filing a sex discrimination claim. In a discussion of the "personal staff" exemption, the court noted that courts "have construed the exception narrowly and have generally looked to the nature and circumstances of the employment relationship between the complaining individual and the elected official to determine if the exception applies." 654 F.2d at 1375. The court then considered the nature of the undersheriff's position, noting that the undersheriff serves at the pleasure of his superior, the county sheriff, who has plenary power of appointment and removal. In addition, the court found that the fact that state law permits the sheriff to have this power shows that the state intends for the undersheriff to be personally accountable to only one public official. "Such a level of personal accountability is reasonable since the sheriff is both politically and civilly liable for any default or misconduct by the undersheriff in his official duties." 654 F.2d ·at 1376. The court concluded that considering the nature of the position and the close working relationship required to perform effectively, plaintiff was in the type of job which Congress intended to be within the personal staff exemption. 654 F.2d at 1376–77.

In *Kyles v. Calcasieu Parish Sheriff's Department*, 395 F.Supp. 1307 (W.D.La. 1975), the court considered the relationship between a sheriff and a deputy sheriff under Louisiana law. In the case, the plaintiff, a former deputy, brought suit seeking redress for alleged racial discrimination in employment. Although the court did not specifically address the exemption provision of Title VII, the court noted that "an employer-employee relationship is an essential element of coverage under the Act." 395 at F.Supp. 1310. The court looked to Louisiana law which recognizes that the relationship between a sheriff and deputy sheriff is not one of employer and employee.

> The relationship is much more personal; it is an appointor-appointee relationship. There is no such person as a career depu-

---

**8.** *But see Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), where, in the context of a § 1983 suit, the majority opinion did not find assistant public defenders to be in a confidential or policymaking rule vis-a-vis the chief attorney. The dissenters roundly criticized the majority's position.

**1324**

ty because the deputy is appointed to fill a term of four years or less to coincide with the term of the appointing sheriff. He has and can earn no right to or prospect of promotion or reappointment. He is not subject to civil service. No contractual rights are involved. The deputy is not an employee but is, rather, an appointee. 395 F.Supp. at 1310.

In *Howard v. Ward County*, 418 F.Supp. 494 (D.N.D.1976), a county deputy sheriff contended that Ward County, North Dakota, acting through its Board of Commissioners, had discriminated against her because of her sex in violation of Title VII and the Equal Pay Act, 29 U.S.C. § 206(d). The plaintiff's claim was that the Board failed to pay her a salary commensurate with that of male deputies in the sheriff's department who did substantially equal work even though the sheriff, on numerous occasions, had recommended to the Board that Plaintiff's salary be increased.

The court discussed the issue of whether the plaintiff was an "employee" within the meaning of Title VII. Noting that definition was "an outstanding example of bad draftsmanship", 418 F.Supp. at 502, the court in narrowly construing the language of 42 U.S.C. § 2000e(f) found that the plaintiff "was not 'chosen by [the sheriff] to be on [his] personal staff.'" *Id.* The court looked to North Dakota law and found that a deputy sheriff is an employee of the state or county, and not of the sheriff. Therefore, it was clear to the court "that a sheriff has only limited discretion in the selection of deputies in North Dakota." *Id.*

Additional factors distinguish this case from the ones previously discussed and the case at bar. The defendants in the case were the County and its Board of Commissioners. It is patent from the court's opinion that the sheriff had repeatedly tried to get the Board to raise the deputy/plaintiff's pay to the equivalent of the pay of the male deputies, but the Board refused. The conflict was between the sheriff and his deputy on the one side and

the Board of Commissioners on the other. Not surprisingly, the court found under North Dakota law the deputy was an employee of the county and not a member of the personal staff of the sheriff. The Court also discussed the fact that at one point in the proceedings, counsel stipulated that the plaintiff was an employee of the sheriff's office of Ward County within the meaning of 42 U.S.C. 2000e(f) and later withdrew from that position. Although the court stated that the stipulation was not binding, there is no doubt that this had some influence on the court.

Finally, in *Brewster v. Shockley*, 554 F.Supp. 365 (W.D.Va.1983), the court discusses the personal staff exemption found in 42 U.S.C. § 2000e(f). In the case which was before the court on two motions to dismiss, plaintiff alleged various counts of employment discrimination based on sex. The court discussed both the *Howard v. Ward County, supra* and *Kyles v. Calcasieu Parish Sheriff's Department, supra* cases and held that:

> the determination of whether a sheriff's deputy is an employee under the Act should be made by considering evidence relevant to the factors used in the *Kyles* case and other like evidence rather than including wholesale, sheriff's deputies in the definition of 'employee' as the *Howard* case did. To make such a wholesale inclusion would be to ignore the vast differences that exist between the sheriff's department in such urban counties of Virginia as Fairfax or Chesterfield and those in rural counties such as Lee or Northumberland. 554 F.Supp. at 371.

The court deferred ruling on this issue until further evidence was more fully developed.

In my analysis of whether deputy sheriffs of Patrick County are "employees" under the Act, it is my duty to construe the language of the Act narrowly and look to the legislative history of the Act. How-

ever, I must also look to the nature and circumstances of the employment relationship between the sheriff and his deputy and to the state law as well as characteristics of the sheriff's department in Patrick County.

As previously noted, the exemption of § 2000e(f) applies only to the staff of elected officials, and the sheriff is an elected official in Virginia. By statute, the deputies are appointed by the sheriff and serve at his will. Deputy sheriffs have no civil service protection, no expectations of continued employment, seniority promotions or any other usual benefits that accrue with longevity and their terms end with the term of their sheriff.

Further, in a rural county such as Patrick County, this Circuit has taken "notice of the intimate relationship that undoubtedly exists between the sheriff and his deputies in a small county .... The efficient operation of the sheriff's office [in a small county] requires a high degree of mutual cooperation, confidence and support." *Ramey v. Harber*, 589 F.2d 753, 757 (4th Cir.1978), *cert. denied*, 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979). Testimony in the case revealed this to be the situation in Patrick County, where the deputies are often the "eyes and ears" of the sheriff in their contact with the county citizens. "In rural counties ... there is a personal relationship not just between the sheriff and deputy but with sheriff and citizen and the deputy and citizen." *Whited v. Fields, supra* at 1457. A deputy is an extension of the sheriff and becomes one and the same as the sheriff. Nothing could be more personal than that.

Thus, although the construction of the language of the Act is to be narrow, I conclude that the position of deputy sheriff of Patrick County is precisely the sort of job Congress envisioned to be within the "personal staff" of an elected official and thus exempt from Title VII. The exclusive powers of selection and retention by sheriff, the legal authority of the deputy to perform all functions and duties of sheriff,

the public's perception of a deputy, the nature of the personal accountability between a deputy and sheriff, the size of the sheriff's staff, and the rural nature of Patrick County indicate to me that sheriff's deputies in Patrick County are not "employees" under Title VII.

Therefore, I need not reach the other issues presented in the case. An appropriate order will be entered dismissing this case and striking it from the active docket of this Court.