**Augusta CLARK, Vicki Hammond and Brenda Buckner**

v.

**TARRANT COUNTY, TEXAS and Tarrant County Adult Probation Department.**

**Civ. A. No. 4–82–260 K.**

United States District Court,
N.D. Texas,
Fort Worth Division.

March 20, 1985.

Art Brender, Fort Worth, Tex., for plaintiff.

Donald K. Buckman, Robert S. Travis, Cantey Hanger Gooch Munn & Collins, Tim Curry, Crim. Dist. Atty., Matthew A. King, Asst. Dist. Atty., Fort Worth, Tex., for defendants.

**1.** Since the Court will consider matters outside of the pleadings, Tarrant County's Rule 12(b)(6)

## MEMORANDUM OPINION

BELEW, District Judge.

There is pending before the Court Defendant Tarrant County's Motion to Dismiss pursuant to Rule 12(b)(7) and Rule 12(b)(6)[1] as well as the Motion of Defendant Tarrant County Adult Probation Department ("TCAPD") for Summary Judgment and Dismissal pursuant to Rule 12(b)(1).

Plaintiffs brought this action alleging that the TCAPD and the County discriminate against female probation officers with regard to salary and promotions within the TCAPD in violation of 42 U.S.C. §§ 1983, 1985, 2000e et seq., and the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs are seeking declaratory and injunctive relief, back pay, costs, and attorneys' fees.

The County argues, in essence, that no claim upon which relief could be granted has been stated against it because it is an entity wholly distinct from the TCAPD and Plaintiffs' grievances concern the TCAPD only. The TCAPD argues that we lack jurisdiction on the Section 2000e claim because, based on Texas statutes and customs which define the nature of Plaintiffs' positions, they are not "employees" within the meaning of 2000e(f). It argues that we lack jurisdiction on all other claims because the TCAPD is an arm of the state and, hence, immune under the Eleventh Amendment. After an oral hearing in which testimony and written documents were received into evidence and after careful consideration of the motions, responses, briefs and affidavits, the Court has determined that there is no genuine issue of material fact and renders judgment in favor of both Defendants for the reasons set forth in the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiffs Augusta Clark, Vicki Hammond, and Brenda Buckner are, or were in

motion will be treated as one for summary judgment pursuant to Rule 56.

the time period relevant to this lawsuit, female probation officers for the TCAPD.

2. The TCAPD and the other adult probation departments around the state were created by Art. 42.12 of the Texas Code of Criminal Procedure. Under Art. 42.12, the adult probation offices which exist in Texas are under the direct supervision of the state judiciary.

3. Art. 42.12, § 1, Tex.Code Crim.Proc. states:

It is the purpose of this Article to place wholly within the State courts of appropriate jurisdiction the responsibility for determining when the imposition of sentence in certain cases shall be suspended, the conditions of probation, and the supervision of probationers, in consonance with the powers assigned to the judicial branch of this government by the Constitution of Texas.

4. Art. 42.12, § 10(a), Tex.Code Crim. Proc. states that the state district judges trying criminal cases shall establish a probation office and employ the necessary district personnel. Subsection (b) provides that when more than one probation officer is required, the state judges shall appoint a Chief Probation Officer who, with the judge's approval, shall appoint assistants and other employees.

5. State district judges are responsible for running the TCAPD and the salaries of the probation officers are paid from the funds of the state judicial district.

6. Chief probation officers are appointed by district judges. The chief probation officers then, pending the approval of their district judge, appoint the other probation officers.

7. The principal source of income for general operating expenses of the TCAPD is an appropriation made by the Texas legislature every two years. Fees paid by probationers supply the remainder.

8. The County does not hire, fire, supervise, or pay the salaries of adult probation officers.

9. The only official involvement that the County has with the TCAPD is that it is required by statute to provide physical facilities, equipment, and utilities as well as enter into a contract with the district judges allowing probation officers to participate in that county's group insurance or self insurance programs and in the retirement plan.

10. Any judgment that Plaintiffs might obtain in this case could be satisfied only from state funds.

*Conclusions of Law*

A. The County Defendant

Plaintiffs' sole rationale for suing the County is their initial belief that Tarrant County was their employer while they were at the TCAPD. *See* First Amended Complaint, ¶ III. Based on our finding of fact with respect to the lack of a significant relationship between the TCAPD and the County,[2] we dismiss the cause of action against the County pursuant to Rule 12(b)(6). *See* Tex.Code Crim.P. art. 42.12; *see generally Shore v. Howard,* 414 F.Supp. 379, 384–85 (N.D.Tex.1976) (Mahon, J.) (official acts of TCAPD held to be done as agent for judges); Op.Atty.Gen. 1983, No. MW–542 (each judicial district is required to establish and maintain its own district probation office).

B. The TCAPD

The TCAPD is a creation of the State of Texas and is an extension of the state judiciary. *See supra* Findings of Fact 2–10; *Shore* 414 F.Supp. at 384–85. Therefore, a lawsuit against the TCAPD is a lawsuit against the state. *See Johnson v. Texas Department of Corrections,* 373 F.Supp. 1108 (S.D.Tex.1974) (lawsuit against Department of Corrections is lawsuit against the state); *Hughes v. Turnpike Authority of Kentucky,* 353 F.Supp. 1105 (E.D.Ky.1973) (lawsuit against the Authority which had no meaningful existence apart from Kentucky Highway Department is lawsuit against state); *Lowe v.*

2. *See supra* Findings of Fact 2–9.

*Texas Tech University,* 540 S.W.2d 297 (Tex.1976) (lawsuit against Texas Tech is lawsuit against state).[3] By virtue of the Eleventh Amendment[4] and judicial interpretation thereof, a state enjoys immunity from lawsuits brought against it by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1898). A state's judicial system shares sovereign immunity and since the TCAPD is part of that system, it, too, is generally immune from suit. *See NAACP v. State of California,* 511 F.Supp. 1244, 1257–58 (E.D.Cal.1981); *Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174, 1180 (D.Nev.1980); *see also Lokey v. Richardson,* 534 F.Supp. 1015, 1019 (N.D.Cal.1982) ("the California Adult Authority is ... absolutely immune from liability") *rev'd on other grounds,* 527 F.2d 949 (9th Cir.1975) *reversal vacated,* 540 F.2d 1022 (9th Cir.1976), *rev'd on other grounds,* 600 F.2d 1265 (9th Cir.1979).

■ A State's sovereign immunity, and thus, the TCAPD's immunity, is not absolute, however; it can be sued if it expressly consents, *see, e.g., Florida Department of Health v. Florida Nursing Home Association,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981)[5] or it can be sued if Congress has expressly abrogated its immunity by federal statute. The Supreme Court has held that both Title VII and, to a far lesser extent, Section 1983 limits a

state's sovereign immunity. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan,* 415 U.S. 651, 675–678, 94 S.Ct. 1347, 1361–1363, 39 L.Ed.2d 662 (1974). Hence, our inquiry focuses on whether Plaintiffs have stated a claim under either of these two federal provisions such that the TCAPD's immunity is abrogated. We shall examine the Title VII claim first.[6]

In general, Title VII affords relief to an employee who claims discrimination from an "employer" as both of those terms are defined in the statute. The definition of "employee" is found at 42 U.S.C. § 2000e(f) and provides:

> (f) The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

---

**3.** We are troubled by the fact that Plaintiffs have not named the state as a defendant. As Chief Justice Burger has recently stated: "It does not make a fetish out of ordinary procedure to say that if a claimant seeks damages from a municipality, this should be done by making it a named party defendant; that will assure the municipality has notice and an opportunity to respond." *Brandon v. Holt,* ── U.S. ──, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). (Burger, C.J. concurring in Judgment) However, due to the policy of liberal construction behind Rule 15(b), we will proceed to decide the legal issues without first insisting that formal amendment be filed. *See Id.* p. ── & n. 19, 105 S.Ct. p. 877 & n. 19 (Opinion of the Court, Stevens, J.)

**4.** The Eleventh Amendment provides:
The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens or subjects of any foreign state.

**5.** No argument is made here that the TCAPD has consented to be sued.

**6.** Plaintiffs also have alleged causes of action pursuant to 42 U.S.C. § 1985 and the due process clauses of the 5th and 14th Amendments. We have found no case that has interpreted Section 1985 to limit a state's sovereign immunity. In any event, we agree with Defendants that Plaintiffs have failed to demonstrate the existence of a conspiratorial relationship between the County and TCAPD. *See supra* Findings of Fact 2–9. As to the due process claims, the Supreme Court has dispelled the view that states surrendered all sovereignty by the mere passage of these amendments. *See Edelman,* 415 U.S. 664–667, 94 S.Ct. 1356–1358 (distinguishing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Express congressional intent to abrogate the immunity conferred by the Eleventh Amendment is required. *Fitzpatrick,* 427 U.S. at 451–52, 96 S.Ct. at 2669–70.

In deciding whether an individual who is in one sense an "employee" of the state within the everyday meaning of the word, is also not an "employee" of the state within the meaning of Title VII, this Court must look to federal rather than state law. *Calderon v. Martin County*, 639 F.2d 271 (5th Cir.1981). State law is relevant only in so far as it defines the responsibilities and powers of a position and is thereby probative of whether one who holds that position is within the "personal staff" exception to Title VII found in 42 U.S.C. § 2000e(f).

The pertinent case law on the "personal staff" exception focuses on the relationship between the elected officials and assistants. In *Owens v. Rush*, 654 F.2d 1370 (10th Cir.1981), the Court held that an "undersheriff" was not covered by Title VII where the "undersheriff" served at the pleasure of his superior who had plenary powers of appointment and removal. The "undersheriff" was personally accountable to only the sheriff who was "both politically and civilly liable for any default or misconduct of the undersheriff in the performance of his official duties." *Id.* at 1376.

The Plaintiffs argue, correctly, that the legislative history of this Title VII exception shows that it was intended to be construed "narrowly." They insist that although *Rush* may apply to the head or chief probation officer, the Plaintiffs in *this* case do not have the same relationship with the district judge that the "undersheriff" had with the "sheriff" in *Rush*. That is, the Plaintiffs are not on the elected official's personal advisory staff.

In *Ramirez v. San Mateo County District Attorney's Office*, 639 F.2d 509 (9th Cir.1981), the Ninth Circuit ruled that a Mexican-American who was not hired as a deputy district attorney for the county, had no claim under Title VII against the district attorney or the county because the position of deputy district attorney was that of a member of the "personal staff" of an elected official and was not covered by state civil service laws. The position, therefore, came within the "personal staff" exception. The Court reasoned that:

> Unlike most other county workers, deputy district attorneys serve at the pleasure of their superior, the district attorney, who has plenary power of appointment and removal.

*Ramirez* at 513. *Cf. Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir.1983).

Other cases that support this position are *Wall v. Coleman*, 393 F.Supp. 826 (S.D.Ga. 1975) and *Kyles v. Calcasieu Parish Sheriff's Dept.*, 395 F.Supp. 1307 (W.D.La.1975). In *Kyles*, the Court held that a deputy sheriff was within the "personal staff" exception. In *Wall*, the Court held that the position of assistant district attorney was within the "personal staff" exception.

At the evidentiary hearing conducted which elucidated the state law and custom on this issue, Judge Tom Cave of the 213th Judicial District testified that he considers probation officers in his court part of his personal staff, that he asks probation officers for recommendations which he sometimes follows and sometimes rejects, and that he instructs probation officers on how he wants particular cases handled. He testified that he is the immediate supervisor of his probation officers with absolute authority to hire, fire, and promote. Judge Gray of Tarrant County Criminal District Court No. 4 also testified that he has absolute authority to hire and fire probation officers and that he considers probation officers immediate advisors in his exercise of judicial powers.

Plaintiff Clark testified that she reports to Judge Cave daily, has no civil service protection, and has free access to the Judge's chambers. Ms. Clark further testified that she is an extension of the Court, that she offers the Judge advice and recommendations on whether to revoke or retain probation, that she is the Judge's immediate advisor on probation matters, and that she would follow the Judge's instructions on handling a probationer even if it conflicted with those of Don Smith—the chief probation officer.

Ms. Clark testified that a probation officer's duties include filing pre-sentence investigation reports, checking up on their

probationers once a month and taking information on delinquent probationers to their judge or the district attorney, depending on the court. The district attorney will then file a petition for revocation and the judge will order the arrest of the probationer. The probation officer prepares a report on the probationer's compliance with the terms of probation and a hearing is held. The decision whether to revoke is then solely within the discretion of the judge.

In short, there is nothing in Ms. Clark's testimony, or otherwise in the record, that contradicted the testimony of either Judge Cave or Judge Gray or which indicated that she did not come within the "personal staff" exception to Title VII.

█ The Court holds the position of probation officer within TCAPD is that of a member of the "personal staff" of an elected official, that such position is not a civil service position, and thus as a matter of law Plaintiffs have no claim under the provisions of Title VII.

Plaintiffs also fail to establish a cause of action pursuant to 42 U.S.C. Section 1983. That statute permits suits against a *person* and provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitute and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... [emphasis added]

For many years, Section 1983 suits against cities were not permitted because it had been held that they were not persons. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). That doctrine was overruled as to *cities* and local govern-

ments in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, states, especially when, as here, they have not been sued through their officers,[7] are not "persons" within the meaning of Section 1983. *See Quern v. Jordan,* 440 U.S. 332, 341–345, 99 S.Ct. 1139, 1145–1147, 59 L.Ed.2d 358 (1979); *Surmeli v. State of New York,* 412 F.Supp. 394 (S.D. N.Y.), *aff'd* 556 F.2d 560 (2nd Cir.1976) *cert. denied, Nyquist v. Surmeli,* 436 U.S. 903, 98 S.Ct. 2230, 56 L.Ed.2d 400 (1978).

Because Plaintiffs have failed to establish both a Title VII and a Section 1983 claim, they have failed to pierce the TCAPD's immunity. As the Supreme Court has recently stated, a state's Eleventh Amendment immunity operates as a jurisdictional bar to a lawsuit regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, ——, 104 S.Ct. 900, 907, 79 L.Ed. 67, 78 (1984). For this reason, we must grant summary judgment in favor of the TCAPD.

Any conclusion of law that should be made a finding of fact is hereby made a finding of fact. Any finding of fact that should be made a conclusion of law is hereby made a conclusion of law.

Judgment will be entered in accordance with this Memorandum Opinion.

---

7. Crucial to the Supreme Court's reasoning in *Monell* was the notion that when people whose acts represent the official policy of a city commit torts, the city can then be sued as a "person" within the meaning of Section 1983. *Monell,* 436 U.S. at 694–95, 98 S.Ct. at 2037–38. In the instant case, Plaintiffs have sued only the TCAPD and none of its officers. It is hard to see how the entity itself is capable of committing torts.